In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-1049

BRUCE CARNEIL WEBSTER,

*Petitioner-Appellant*,

*v.*

JOHN F. CARAWAY, Warden, United States Penitentiary, Terre Haute,

*Respondent-Appellee*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:12-cv-86-WTL-WGH — **William T. Lawrence**, *Judge*.

———————————

ARGUED JULY 24, 2014 — DECIDED AUGUST 1, 2014

———————————

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Bruce Webster was convicted of a federal capital offense and sentenced to death. Details of the crime, which do not matter for current purposes, may be found in *United States v. Webster*, 392 F.3d 787 (5th Cir. 2004) (direct appeal), and *United States v. Webster*, 421 F.3d 308 (5th Cir. 2005) (28 U.S.C. §2255). The Fifth Circuit also denied Webster's application for permission to pursue a second col-

lateral attack. *In re Webster*, 605 F.3d 256 (5th Cir. 2010). Having exhausted his opportunities within the Fifth Circuit, where the crime and trial occurred, Webster asked for collateral relief under 28 U.S.C. §2241 in the Southern District of Indiana, where he is confined.

Webster's guilt, and the heinousness of his acts, are uncontested. He sought to persuade a jury, the district judge, and the judges of the Fifth Circuit that he is not death-eligible because he is mentally retarded. The Supreme Court held in *Atkins v. Virginia*, 536 U.S. 304 (2002), that the Constitution forbids the execution of persons who are retarded or unable to understand what capital punishment means and why they have been sentenced to die. See also *Hall v. Florida*, 134 S. Ct. 1986 (2014). Webster did not need to rely on the Constitution, however, for he has the protection of a federal statute: "A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person." 18 U.S.C. §3596(c). At trial Webster introduced evidence from multiple experts who concluded that his IQ is less than 70 and that he is retarded. The prosecutor responded with evidence from other experts who concluded that Webster is not retarded and was malingering in an effort to evade punishment. The jury sided with the prosecution, the judge sentenced Webster to death, and the Fifth Circuit held both on direct appeal and in a collateral attack under §2255 that ample evidence supports this decision. (Webster does not argue that he is unable to understand the concept of capital punishment or why he has received that sentence.)

No. 14-1049                                                3

In the current proceeding Webster does not contend that the law—or his mental condition—has changed since the Fifth Circuit's decisions on direct and collateral review. Instead he contends that he has new evidence bearing on the question that the jury decided adversely to him. His current legal team has acquired records that the Social Security Administration created when he applied for disability benefits. The SSA sent him to see a psychologist, who administered an IQ test that produced a score under 60. This psychologist, plus two consulting physicians, concluded that he is retarded. The SSA nonetheless classified him as not disabled. He contends that the three medical reports could have changed the outcome of the trial, since the Social Security proceedings predated the crime of which he stands convicted—and therefore, his lawyers insist, occurred before he had an incentive to deceive people about his mental condition.

But the district court dismissed the §2241 petition without a hearing, ruling that it is blocked by §2255(e), which reads: "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained … unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." The district judge saw nothing "inadequate or ineffective" about §2255, which Webster had been able to use to obtain a decision by the Fifth Circuit about his mental condition. *Webster v. Lockett*, 2013 U.S. Dist. Lexis 161375 (S.D. Ind. Nov. 13, 2013). The judge thought that a prisoner's own failure to present evidence does not demonstrate statutory inadequacy or ineffectiveness.

We agree with that conclusion. Taken in the light most favorable to Webster—which is to say, on the assumption that the evidence *is* "newly discovered" and might have affected the jury's evaluation—the arguments now presented tend to impugn the effectiveness of Webster's former lawyers but not of §2255. The trial, the direct appeal, and the proceeding under §2255 offered opportunities to use the evidence that Webster now seeks to present. That Webster's legal team did not take (full) advantage of those opportunities does not demonstrate a flaw in the statute.

No court of appeals has deemed §2255 "inadequate or ineffective" just because counsel failed to take maximum advantage of the opportunity it extends. To get anywhere, Webster must persuade us not only to break new ground but also to hold that the changes to §2255 made in 1996 by the Antiterrorism and Effective Death Penalty Act—and particularly the addition of §2255(h), which limits second or successive petitions to those that satisfy a short list of conditions—made §2255 ineffective. In other words, he must persuade us that the AEDPA is self-negating, that by restricting the number of §2255 petitions Congress indirectly authorized an unlimited number of §2241 petitions seeking the same relief. At oral argument, Webster's counsel was explicit: He asked us to apply pre-1996 law and to hold that an additional collateral attack is proper whenever the prisoner does not abuse the writ. That would write §2255(h) and 28 U.S.C. §2244(b) out of the United States Code. Yet courts do not interpret statutes to make revisions self-cancelling. We have held that §2255(h) does not make §2255 as a whole inadequate or ineffective. See *Unthank v. Jett*, 549 F.3d 534, 535–36 (7th Cir. 2008); *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). Webster does not persuade us to change course.

No. 14-1049                                                    5

Our decisions in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), and *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013), discuss the circumstances that may justify a federal prisoner's use of §2241 to test the validity of his conviction or sentence. When a change of law, retroactively applicable, shows that the prisoner did not commit a crime or has received an illegally high sentence, §2241 is available if it otherwise would be impossible to implement the Supreme Court's intervening decision. Section 2255(h) allows for a new round of collateral review in response to retroactive constitutional decisions, but Congress did not appear to contemplate the possibility of retroactive *statutory* decisions that show a prisoner's innocence. That's the flaw that *Davenport* and *Brown* see as justification for invoking §2241.

*Davenport* and its successors conclude that §2241 is available to provide the full retroactive effect contemplated by the Supreme Court. But Webster is not the beneficiary of a retroactive decision that cannot be implemented except through §2241. There has been no change of law; §3596(c) predates his crime and trial. Nor does Webster contend that his mental condition has changed. Instead he wants to use §2241 to make a better factual record and to place his arguments before a different circuit, hoping for a better result. These desires, understandable as they are, do not call into question the adequacy or effectiveness of §2255.

For what little it is worth given this legal conclusion, we add that the evidence that Webster wants to introduce cannot helpfully be called "newly discovered." Webster has long known of it, or readily could have discovered it. It concerns his own application for Social Security disability benefits. He knew about that; his lawyer at trial knew about it too

(his mother mentioned the subject during her testimony); and it would have been possible to retrieve the records in time for use during the trial and §2255 proceeding.

Webster's current legal team asserts that his former lawyer was stonewalled when trying to obtain these records, but that is not what the former lawyer himself said. He related that he asked the Social Security Administration for Webster's records but lacks any memory of a response and therefore *assumes* that he must have been denied access. Yet that assumption is unfounded. Former counsel did not produce his file (he says that he no longer has it) and therefore did not have any records about the request (if any) and response (if any); he has only a lack of recollection to go on. That's pretty weak. One sensible inference would be that former counsel, or an investigator on his behalf, simply did not follow through. Current counsel obtained the records less than four months after asking, even though the disability case is an old one and many records had been sent to long-term storage. None of the difficulties (if there were any) that original counsel encountered can be blamed on §2255.

Nor would the Social Security records facilitate a new line of defense. Webster's trial counsel had, and introduced, other medical records in which physicians diagnosed retardation before the murder. These records enabled him to ask the jury to infer that he had not started trying to deceive examiners after the prosecution began. The prosecutor could and did reply that Webster had reasons other than a desire to avoid the death penalty to minimize his mental abilities. Trying to obtain disability benefits would have been one such reason, so the evidence that current counsel now wants

No. 14-1049                                          7

to use could have been subject to much the same response as the prosecutor made to the records introduced at sentencing.

But we have not set out to decide what effect the SSA records might have had in the hands of a top-notch lawyer; it is enough to conclude that the to-and-fro between the prosecutor and Webster's current legal team does not hint at a structural problem in §2255, so §2255(e) disallows the use of §2241 to get a fresh decision.

Before we close, we must consider whether the district court entered the proper judgment. The court dismissed the §2241 petition with prejudice. That's the right step if the court had subject-matter jurisdiction. Yet several circuits have held that §2255(e) limits the federal courts' subject-matter jurisdiction. See *Williams v. Warden*, 713 F.3d 1332, 1337–40 (11th Cir. 2013) (collecting cases). The Eleventh Circuit treated us as reaching a contrary conclusion in *Brown v. Rios*, 696 F.3d 638 (7th Cir. 2012), but discounted that decision on the ground that the court had "simply accepted the government's concession" (*id*. at 1340 n.1)—which would be an improper way to address a jurisdictional issue. See also *Sperberg v. Marberry*, 381 Fed. App'x 602 (7th Cir. 2010) (nonprecedential) ("[w]hether the proceeding is allowable under §2255(e) is a question on the merits; it does not affect subject-matter jurisdiction."). In light of *Williams* we have taken a fresh look at the issue and once more conclude that §2255(e) does not curtail subject-matter jurisdiction.

Here is its language again: "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained … unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his

detention." It does not employ the word jurisdiction—nor is §2255 itself a jurisdictional statute. A motion under §2255 is one in the criminal case, and jurisdiction thus comes from 18 U.S.C. §3231, which supplies subject-matter jurisdiction in all federal criminal prosecutions. Section 2255(e) does not purport to contract that jurisdiction.

Nor does §2255(e) restrict the several sources of subject-matter jurisdiction available when a federal prisoner seeks a writ of habeas corpus. One source is 28 U.S.C. §1331, which creates jurisdiction for claims arising under federal law. Another is 28 U.S.C. §1343(a)(4), which deals with civil-rights claims, of which petitions for habeas corpus are examples. Then there is §2241 itself, which appears to authorize federal litigation independent of other statutes (which, when §2241 was enacted, had amount-in-controversy limits that could have made them unavailable for claims within its scope). Section 2241(e) has two subdivisions that expressly limit subject-matter jurisdiction, but neither applies to a claim arguably blocked by §2255(e). Because §2241 itself tells us when subject-matter jurisdiction runs out, it is inappropriate to infer additional limits from non-jurisdictional language in a different statute. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), says that if "Congress does not rank a statutory limitation … as jurisdictional, courts should treat the limitation as nonjurisdictional". See also, e.g., *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (reiterating this conclusion). Section 2255(e) sets a firm limit, to be sure, but not one that Congress has added to the jurisdictional ranks. The court has "adjudicatory authority" (*Gonzalez*, 132 S. Ct. at 648) to determine *whether* §2255 is inadequate or ineffective in a given situation; no more is necessary for subject-matter jurisdiction.

*Williams* concludes that §2255(e) is jurisdictional, nevertheless, because it uses mandatory language. An application "shall not be entertained" unless a condition is met. The Eleventh Circuit wrote that it found the limit jurisdictional "[b]ased on the text alone, which speaks in imperative terms". 713 F.3d at 1338. Yet the Supreme Court has held that mandatory rules are not automatically jurisdictional. *Gonzalez* is one illustration. It holds that 28 U.S.C. §2253(c)(3) is not jurisdictional even though it includes the word "shall". The Court continued: "calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored. … This Court … has long 'rejected the notion that "all mandatory prescriptions, however emphatic, are … properly typed jurisdictional."'" 132 S. Ct. at 651, quoting from *Henderson v. Shinseki*, 131 S. Ct. 1197, 1205 (2011), and citing *Dolan v. United States*, 560 U.S. 605, 611–12 (2010).

The Court in *Gonzalez* also cited *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), which like *Henderson* and *Dolan* declined to equate mandatory rules with jurisdictional ones. *Reed Elsevier* concerned a portion of the Copyright Act that made registration essential to litigation. A court of appeals held that the mandatory nature of that condition on judicial review made it jurisdictional; the Justices unanimously disagreed. We reached a similar conclusion in *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc), about language in the Foreign Trade Antitrust Improvements Act providing that some parts of the Sherman Antitrust Act "shall not apply" to certain international events. That language stated a question on the merits, we held, and did not contract subject-matter jurisdiction. See

also *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 253–54 (2010).

Two more examples of mandatory but non-jurisdictional rules. A bankruptcy court can extend the time for objection to discharge if and only if the motion for additional time is filed within 60 days of the creditors' meeting. A court of appeals treated the mandatory nature of this rule as a jurisdictional limit; the Supreme Court held otherwise. *Kontrick v. Ryan*, 540 U.S. 443 (2004). Our other example is *Eberhart v. United States*, 546 U.S. 12 (2005). Criminal defendants are entitled to move for new trials, but the time available to do so is limited—and at the time that limit could not be extended. Fed. R. Crim. P. 33, 45(b)(2). The Supreme Court twice treated the mandatory nature of this rule as a jurisdictional restriction. *United States v. Robinson*, 361 U.S. 220, 229 (1960); *United States v. Smith*, 331 U.S. 469, 474 & n.2 (1947). But *Eberhart* disapproves *Robinson* and *Smith* to the extent that they equate "mandatory" rules with "jurisdictional" ones. *Eberhart* classified the time limits as among the many claims-processing rules that shape the course of litigation but can be waived or forfeited.

The United States Code is jam-packed with imperative language. Rules of law tell litigants, and courts, what must be done. These rules are enforced when their beneficiaries invoke them. If they are also treated as jurisdictional, however, then courts must raise the subject on their own, even when litigants choose to waive or forfeit their rights. Declaring a rule to be "jurisdictional" not only makes extra work for judges but also creates a prospect that the time and energy invested in a case will prove to be wasted, when an appellate court dismisses the suit or directs the litigants to start

over. Curtailing the need for judges to resolve issues on their own initiative, and the risk that both private and judicial efforts will be squandered, are the principal reasons why the Supreme Court has insisted in recent years that very few rules be treated as jurisdictional. See, e.g., *Gonzalez*, 132 S. Ct. at 647–48.

The text of §2255(e) does not suggest to us that Congress set out to prevent the Attorney General from consenting to collateral review under §2241, if the Executive Branch thinks that necessary to avert an injustice. We conclude, accordingly, that §2255(e) does not contract subject-matter jurisdiction—which means that its benefits can be waived or forfeited. But in this case the Attorney General has invoked his right to say "enough is enough" and to prevent an additional round of collateral review. The district court had jurisdiction and entered the proper kind of judgment.

AFFIRMED