IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

## No. 14-1049

BRUCE CARNEIL WEBSTER,

Petitioner-Appellant,

v.

JOHN F. CARAWAY, Warden,

Respondent-Appellee.

On Appeal from the United States District Court
For the Southern District of Indiana
Judge William T. Lawrence
District Court No. 2:12-cv-00086-WTL-WGH

## PETITIONER-APPELLANT'S PETITION FOR

## REHEARING *EN BANC*

## THIS IS A DEATH PENALTY CASE

Steven J. Wells
*Counsel of Record*
Kirsten E. Schubert
Timothy J. Droske
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Dated: September 15, 2014

*Attorneys for Petitioner-Appellant*
*Bruce Carneil Webster*

i

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **14-1049**

Short Caption: **Webster v. Caraway**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[　]　　PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Bruce Carneil Webster

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Dorsey & Whitney LLP;

Eric K. Koselke, Attorney at Law

(3)　If the party or amicus is a corporation:

　　　i)　Identify all its parent corporations, if any; and

　　　　N/A

　　　ii)　list any publicly held company that owns 10% or more of the party's or amicus' stock:

　　　　N/A

Attorney's Signature: **s/ Steven J. Wells**　　　　Date: **9/15/2014**

Attorney's Printed Name: **Steven J. Wells**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ✗　**No**

Address: **50 South Sixth Street, Suite 1500**

**Minneapolis, MN 55402**

Phone Number: **612-340-2600**　　　　Fax Number: **952-516-5526**

E-Mail Address: **wells.steve@dorsey.com**

rev. 01/08 AK

ii

## TABLE OF CONTENTS

Page

PETITIONER'S STATEMENT PURSUANT TO F.R.A.P. 35 ..................................... 1

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................. 4

I.     The Panel's Analysis of Section 2255 Is Contrary to this Court's Prior
       Decisions and Would Read Section 2255(e) Out of Existence .......................... 4

       A.     The Panel's Opinion Ignores, and Is In Conflict With, This
              Court's Existing Framework ................................................................ 5

       B.     The Panel's Opinion Reads §2255(e) Out of the Statute ........................ 9

       C.     This Petition Does Not Open the Floodgates ...................................... 10

II.    An Evidentiary Hearing Is Required, and the Panel's Comments on the
       Facts Misapprehend the Availability and Importance of the Evidence ......... 11

       A.     An Evidentiary Hearing is the Correct Vehicle for Evaluation of
              the Availability and Significance of the SSA Records ......................... 11

       B.     The Panel's Review of the Record Ignored Key Evidence and Its
              Importance .................................................................................... 12

              1.     The Newly Disclosed Evidence was Previously
                     Unavailable as Demonstrated by Webster's Prior
                     Attempts to Obtain the Evidence ............................................. 12

              2.     Webster's Mental Retardation Was Hotly Contested at
                     Trial, and the SSA Records Are Highly Relevant ..................... 13

CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Virginia,*
    536 U.S. 304 (2002) ................................................................................ 1, 9, 12

*Banks v. Dretke,*
    540 U.S. 668 (2004) ......................................................................................... 12

*Brown v. Caraway,*
    719 F.3d 583 (7th Cir. 2013) ...................................................................*passim*

*In re Davenport,*
    147 F.3d 605 (7th Cir. 1998) ...................................................................*passim*

*Garza v. Lappin,*
    253 F.3d 918 (7th Cir. 2001) ...................................................................*passim*

*Hall v. Florida,*
    134 S.Ct. 1986 (2014) ......................................................................................... 9

*Roper v. Simmons,*
    543 U.S. 551 (2005) ............................................................................................ 9

*Taylor v. Gilkey,*
    314 F.3d 832 (7th Cir. 2002) ............................................................................. 5

*Thomas v. Allen,*
    614 F. Supp. 2d 1257 (N.D. Ala. 2009) ................................................... 14

*In re Webster,*
    605 F.3d 256 (5th Cir. 2010), *cert. denied,* 131 S. Ct. 794 (2010) ................ 2, 3, 11

*Webster v. Caraway,*
    No. 14-1049 (7th Cir. Aug. 1, 2014) ...................................................... 3

*Wiley v. Epps,*
    668 F. Supp. 2d 848 (N.D. Miss. 2009) ................................................. 14

**Statutes**

28 U.S.C. §2241 ................................................................................................*passim*

28 U.S.C. §2255 ................................................................................................*passim*

28 U.S.C. §§2255(e)................................................................................*passim*

28 U.S.C § 2255(h) ..............................................................................*passim*

28 U.S.C. §2255(h)(1)................................................................... 2, 8, 10

28 U.S.C §2255(h)(2)........................................................................... 8

**Other Authorities**

Cir. R. 40(e) .......................................................................................... 6

Fed. R. App. P. 35 ................................................................................. 1

Fed. R. App. P. 40 ................................................................................. 1

**PETITIONER'S STATEMENT PURSUANT TO F.R.A.P. 35**

Petitioner-Appellant Bruce Carneil Webster ("Webster") requests that the Court grant a rehearing en banc pursuant to Fed. R. App. P. 35 and 40. The Panel's decision affirming the dismissal of Webster's §2241 habeas petition raises an issue of exceptional importance: whether a death row prisoner, with evidence previously unavailable and newly discovered after his direct appeal and §2255 petition showing he is mentally retarded and thus categorically ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), is permitted to present this evidence in a habeas petition under §2241, or is instead left without legal recourse. Moreover, the Panel's basis for affirming the dismissal of the habeas petition conflicts with prior decisions of this Court by elevating the acknowledged minority view expressed by one judge into the rule of law, in conflict and in tension with this Court's decisions in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998); *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001); and *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013), and contrary to statute and *Atkins*.

**INTRODUCTION**

Webster is a mentally retarded prisoner held under the sentence of death in the U.S. Penitentiary in Terre Haute, Indiana. Fifteen years after the denial of Webster's 28 U.S.C. §2255 petition, Webster's current counsel obtained significant new evidence from the Social Security Administration ("SSA") that, despite being requested prior to trial, had never been made available to Webster's trial or §2255 counsel. This evidence – including three diagnoses of mental retardation by

1

unbiased federal government doctors prior to the commission of the crime – would have obliterated the Government's response to Webster's mental retardation defense at trial and established that Webster is mentally retarded. Webster was denied the opportunity to present this evidence in a successive motion under 28 U.S.C. §2255(h)(1), even though the evidence was "virtually guaranteed" to establish Webster's mental retardation and therefore his categorical ineligibility for the death penalty. *In re Webster*, 605 F.3d 256 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 794 (2010). As Judge Weiner – a judge intimately familiar with the record, having sat on the panel for Webster's direct appeal, initial §2255 motion, and application for a successive §2255 motion – explained in his concurrence, he

> write[s] separately to emphasize the absurdity of its Kafkaesque result: Because Webster seeks to demonstrate only that he is constitutionally ineligible for the death penalty—and not that he is factually innocent of the crime—we must sanction his execution. If the evidence that Webster attempts to introduce here were ever presented to a judge or jury for consideration on the merits, it is virtually guaranteed that he would be found to be mentally retarded….These reports, the merits of which have never been considered by any judge or jury, refute much of the evidence introduced by the government at the penalty phase of Webster's trial….Under § 2255(h), however, we must turn a blind eye to this evidence, as it speaks to Webster's constitutional eligibility for the death penalty and not his factual guilt or innocence of the crime…Although I concur in the majority's opinion as a correct statement of the law, I continue to harbor a deep and unsettling conviction that, albeit under Congress's instruction which ties our judicial hands so illogically, we today have no choice but to condone just such an unconstitutional punishment.

*Id.* at 259-60.

2

Webster then brought a petition for habeas corpus pursuant to 28 U.S.C. §§2255(e) and 2241. The District Court held, and the Panel affirmed, in another "Kafkaesque result," that no matter how conclusive the newly discovered evidence of mental retardation, it could not, "unfortunately," allow Webster to present that evidence under §2241. According to the Panel, which acknowledged that the "only" question before it was the "legal question"[1] presented by Webster's Petition, there is *no* mechanism for a prisoner to present newly discovered evidence of constitutional ineligibility for the death penalty obtained after a prisoner's initial federal habeas petition has been denied. The Supreme Court, however, has declared that execution of the mentally retarded is forbidden. It cannot be that, under §§2255(e) and 2241, this Court has "no choice but to condone…an unconstitutional punishment." *In re Webster*, 605 F.3d at 260 (Weiner, J., concurring). Accordingly, this case presents two questions of exceptional importance for rehearing en banc:

(1) Whether 28 U.S.C. §2241 provides a vehicle for a mentally retarded prisoner to present previously unavailable evidence establishing his constitutional ineligibility for the death penalty.

(2) Whether, if 28 U.S.C. §2241 does provide such a mechanism, an evidentiary hearing before the District Court is warranted.

Contrary to the law of this Circuit, the Panel held that a claim based on newly discovered evidence of categorical ineligibility for the death penalty may not be raised under §2255(e) because that would "self-negate" the limitations contained in §2255(h). That holding was first expressed by the Presiding Judge here in a Circuit Rule 40 Statement in *Brown*, 719 F.3d at 596-601, where it was explicitly

---

[1] Recording of Oral Argument at 46:37 to 46:47, *Webster v. Caraway*, No. 14-1049 (7th Cir. Aug. 1, 2014); *see also* slip op. 5.

3

acknowledged this is not the law in this Circuit. The Panel's holding ignores the fact this Court has allowed §2241 claims that fall outside the limitations of §2255(h), *see Garza*, 253 F.3d at 921-23; *Davenport*, 147 F.3d at 608-12; *Brown*, 719 F.3d at 586-88. And it ignores the limiting principles that would restrict a decision in Webster's favor to an extremely limited subset of capital cases.

Moreover, despite acknowledging that this Petition presents a question of law, the Panel proceeded to comment on a portion of the new evidence presented by Webster, but ignored important evidence (*e.g.*, the highly suspicious circumstances under which the SSA produced and then destroyed evidence) and misconstrued the importance of other evidence (*e.g.*, the fact that the Government's "bias" attack on defense experts at trial would have been completely undermined by unbiased SSA diagnoses prior to the crime). The Panel's selective and cursory analysis of evidence when a man's life is at stake highlights the importance of a full evidentiary hearing, especially where one U.S. Court of Appeals judge has found the new evidence is "virtually guaranteed" to establish Webster's mental retardation.

## ARGUMENT

### I.    The Panel's Analysis of Section 2255 Is Contrary to this Court's Prior Decisions and Would Read Section 2255(e) Out of Existence

The Panel stated its framework for analysis as follows: "To get anywhere, Webster must persuade us not only to break new ground but also to hold that the changes to §2255 made in 1996…made §2255 ineffective. In other words, he must persuade us that the AEDPA is self-negating, that by restricting the number of §2255 petitions Congress indirectly authorized an unlimited number of §2241

4

petitions seeking the same relief." Slip op. 4. That premise is wrong. First, the framework set forth by the Panel is not the one previously established by the Court, but instead reflects the minority view previously expressed by the Presiding Judge in *Brown*. Second, Webster's position does not make AEDPA "self-negating"; rather, the Panel's holding effectively, and improperly, reads §2255(e)'s saving clause out of existence. Third, the Panel set up a false premise—that permitting Webster to proceed with his §2241 petition would open the floodgates to an unlimited number of such petitions—when this case focuses on a very narrow class of cases.

### A. The Panel's Opinion Ignores, and Is In Conflict With, This Court's Existing Framework

The framework set forth by the Panel is fundamentally at odds with this Court's precedent. Critically, what Webster was required to "persuade" the Panel of is precisely what is already the law in this Circuit. *Davenport* provides, "to hold that a federal prisoner may *never* use 2241 would read out of 2255 the express permission to do so if the remedy created by 2255 is inadequate or ineffective to test the legality of the prisoner's detention." *Davenport*, 147 F.3d at 608. In *Davenport*, and in later decisions including *Garza* and *Brown*, this Court has refused to read the "savings clause" out of §2255(e), permitting petitioners to seek relief under §2241 when §2255 was inadequate or ineffective because Congress "may have overlooked" the issue raised in the petition. *See Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *Brown,* 719 F.3d at 587, n.1.

The Presiding Judge of this Panel, however, has sharply criticized *Davenport*, and its extension in *Brown*, stating that *Davenport* "vitiate[s]" the amendment of

§2255(h) "made by [AEDPA]," which "adds a limit on multiple §2255 motions, with two exceptions." *Brown*, 719 F.3d at 599 (Easterbrook, J., Cir. R. 40(e) Statement). That criticism was summed up as follows:

> What sense can it make to hold that the 1996 amendments to §2255 are self-defeating?  Yet, by combining *Davenport* and *Narvaez*, the panel concludes that §2255(f) and §2255(h) make §2255 as a whole "inadequate or ineffective" because the AEDPA sets limits. Laws should not be interpreted as self-cancelling.

 *Id.* at 600. In *Brown*, it was conceded that this view was the minority. *Id.* ("*Davenport* and *Narvaez* enjoy support in this circuit. I appear to be the only judge who doubts their soundness.") Nonetheless, the Panel improperly elevated this minority view to law, demanding that Webster "persuade" the Panel "that the AEDPA is self-negating, that by restricting the number of §2255 petitions Congress indirectly authorized an unlimited number of §2241 petitions seeking the same relief." Slip op. 4. However, this Circuit has "recognized that there might be rare circumstances in which the operation of the successive petition rules absolutely prevented the petitioner from ever having an opportunity to raise a challenge to the legality of his sentence," in which case, "§2255 would be genuinely inadequate or ineffective to test the legality of his detention." *Garza*, 253 F.3d at 922. This case is that rare circumstance. *Davenport* and its progeny remain Seventh Circuit law, and the Panel's deviation compels rehearing *en banc*.

Under this Court's existing framework, the Panel was required to consider not whether any case can ever satisfy the savings clause of §2255(e), but whether Webster has had an opportunity to present his claim. As a result of the SSA's

6

failure to disclose Webster's mental health records, he has not.  Section 2255(h) provides for successive motions containing:

> (1)  *newly discovered evidence* that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant *guilty of the offense*; or
>
> (2)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(emphasis added). Just as this Court has found that (h)(2) does not address claims based on retroactive *statutory* decisions (only constitutional decisions), (h)(1) does not address petitions based on newly discovered evidence of categorical ineligibility for the death penalty (only new evidence of innocence of the crime). As in *Garza*, a case involving a later-issued decision by the Inter-American Commission on Human Rights bearing on the U.S. court's consideration of uncharged murders in a death penalty sentencing, §2255 is inadequate, and the petitioner "is entitled to raise his argument…under §2241" where the claim "could not have been raised in his direct appeals or in his first §2255 motion," or "a successive petition under §2255. *Garza*, 253 F.3d at 923. Under this standard, and assuming (as the Panel did here) that Webster's "evidence *is* 'newly discovered' and might have affected the jury's evaluation," slip op. 4[2] (emphasis in original), Webster is entitled to bring his arguments under §2241 because this new evidence of his mental retardation was

---

[2] Although the Panel purports to concede that the SSA records were previously unavailable, in the very same paragraph the Panel opines that Webster's legal team simply did not take full advantage of the opportunity to present those records, necessarily and contradictorily assuming that the SSA records *were* available. *See* slip op. at 4.

withheld and not produced by the SSA until after his direct appeal and initial §2255 motion, but could not be raised in a subsequent §2255 petition.

The Panel circumvented this Court's precedent in *Garza* by citing only to *Davenport* and *Brown* for the myopic proposition that a §2241 petition is permitted only when retroactive *statutory* decisions, rather than the retroactive *constitutional* decisions addressed in §2255(h)(2), are at issue. Slip op. 5. This is in conflict with *Garza*, which permitted a §2241 petition that did not deal with a retroactive statutory decision at all. Moreover, it ignores that the case at hand squarely implicates the inadequacy and ineffectiveness of §2255(h)(1) with respect to *newly disclosed evidence*, which was never at issue in *Davenport*, *Brown*, or any other Seventh Circuit opinion addressing the adequacy and effectiveness of §2255(h)(2).

Applying this Court's reasoning as to the exception in §2255(h)(2) to §2255(h)(1) compels permission to petition under §2241. Indeed, as the Panel here identified, "the flaw that *Davenport* and *Brown* see as justification for invoking §2241" is that "Section 2255(h) allows for a new round of collateral review in response to retroactive constitutional decisions, but Congress did not appear to contemplate the possibility of retroactive *statutory* decisions that show a prisoner's innocence." Slip op. 5. So too here, §2255(h)(1) allows for a new round of collateral review in response to newly discovered evidence as to the guilt of the offense, but Congress did not appear to contemplate the possibility of newly discovered evidence showing a prisoner's constitutional categorical ineligibility for the death penalty. Congress' oversight is not surprising—the Supreme Court did not establish the

constitutional categorical ineligibility of the mentally retarded for the death penalty until 2002, in *Atkins*, some eight years *after* AEDPA was passed.[3] Under this Court's framework, then, this case squarely presents a "glitch in §2255" that was further highlighted by the Supreme Court's decision this past term in *Hall v. Florida*, 134 S.Ct. 1986 (2014) reaffirming the unconstitutionality of executing the mentally retarded. Rehearing *en banc* is required to correct the Court's departure from its own precedent on this issue of life and death.

### B.    The Panel's Opinion Reads §2255(e) Out of the Statute

The Panel's opinion is also fundamentally at odds with the statutory framework of §2255. The Panel reasons that permitting petitions for habeas corpus under §2241 "would write §2255(h) and 28 U.S.C. §2244(b) out of the United States Code," render the "revisions self-cancelling," and AEDPA "self-negating." Slip op. 4. This same reasoning fails because it reads §2255(e) entirely out of existence. On its face, §2255(e) does not include §2255(h)'s limitations, so, under the Panel's logic, no claim could ever be brought under §2255(e). The Panel's decision is squarely at odds with *Davenport*, where this Court properly recognized that "to hold that a federal prisoner may *never* use 2241 would read out of 2255 the express permission to do so if the remedy created by 2255 is inadequate or ineffective to test the legality of the prisoner's detention." 147 F.3d at 608. Moreover, the Panel's decision reading §2255(e) out of existence gives rise to a constitutional issue, because its effect is to suspend the writ of habeas corpus.

---

[3] Likewise, the constitutional categorical ineligibility of juveniles for the death penalty was not established until the 2005 decision in *Roper v. Simmons*, 543 U.S. 551 (2005).

Furthermore, §2255(e) is on all fours with respect to Webster's challenge here to his *sentence*, rather than his conviction. In *Brown*, this Court held that a petitioner may utilize the savings clause to challenge his sentence, because "[t]he text of the clause focuses on the legality of the prisoner's detention; it does not limit its scope to testing the legality of the underlying criminal conviction." *Brown*, 719 F.3d at 588 (internal citation omitted); *see also Garza*, 253 F.3d at 921-23. Indeed, this distinction between the savings clause's applicability to *sentencing*, and §2255(h)(1)'s exclusive focus on the underlying *conviction*, is the very "glitch" giving rise to §2255(e)'s applicability here. When, as here, the "newly discovered evidence" goes to a prisoner's constitutional categorical ineligibility for the death penalty, §2255(h)(1)'s exclusive focus on evidence going to guilt of the offense is inadequate.

**C.     This Petition Does Not Open the Floodgates**

Finally, the Panel's framework sets up a false premise: That allowing a claim here would "authorize[] an unlimited number of §2241 petitions seeking the same relief." Slip op. 4. This ignores the narrow focus of Webster's claim. The Supreme Court has repeatedly declared that the Constitution is absolute in categorically prohibiting the execution of the mentally retarded. Webster's petition is focused exclusively on this narrow prohibition, because Congress overlooked claims based on new evidence of categorical ineligibility for the death penalty.

Moreover, the circumstances presented here are extraordinary and limited. This case does not concern newly *created* evidence of mental retardation, which could give rise to an infinite number of bites at the apple. Rather, it is newly *disclosed* government records that were *already in existence*, but withheld during

10

trial and the initial habeas proceeding, which go to the heart of the Government's case at trial. Moreover, since Congress did not change §2255(e) when it enacted §2255(h), the pre-AEDPA limitations on successive habeas petitions remain intact as a meaningful check on the "floodgates" the Panel imagined.

## II. An Evidentiary Hearing Is Required, and the Panel's Comments on the Facts Misapprehend the Availability and Importance of the Evidence

### A. An Evidentiary Hearing is the Correct Vehicle for Evaluation of the Availability and Significance of the SSA Records

The Panel recognized that the question presented by Webster's petition was a "legal" question. Slip op. 5. If the *en banc* Court concludes, as it should, that §2241 provides a proper mechanism for the presentation and evaluation of previously unavailable evidence of categorical ineligibility, it should remand this case to the District Court for discovery and an evidentiary hearing. The District Court did not make fact findings on this evidence. A judge of the Fifth Circuit, who had reviewed Webster's case twice before reviewing the evidence Webster seeks to present now, opined that the evidence "virtually guarantee[s] that he would be found to be mentally retarded," *In re Webster*, 605 F.3d at 259. This Panel's cursory and flawed comments suggest the opposite. But neither of these comments constitute fact findings. That is a job for the District Court, which can consider the testimony of trial counsel and the other relevant circumstances, and weigh its importance in conjunction with a full evaluation of the evidence presented at trial.

11

**B.    The Panel's Review of the Record Ignored Key Evidence and Its Importance**

**1.    The Newly Disclosed Evidence was Previously Unavailable as Demonstrated by Webster's Prior Attempts to Obtain the Evidence**

The Panel, in *dicta*, opines that the evidence cannot be called "newly discovered," because Webster has long known of the evidence he now seeks to present, and Webster's counsel could have previously obtained and presented the evidence. Slip op. 5-6. Both of these arguments are without merit. The Panel's suggestion that Webster himself should have known and appreciated the significance of the SSA records (and, apparently, tried harder to force their disclosure) conflicts with Supreme Court precedent: one of the very reasons the mentally retarded cannot be executed is their inability to assist trial counsel in their defense. *Atkins,* 536 U.S. at 320-21. Furthermore, a defendant does not have the burden to search for undisclosed materials when the government represents that all such material has been disclosed. *Banks v. Dretke*, 540 U.S. 668, 695 (2004). The Panel's view that Webster knew about and should have more actively sought his SSA records is also unsupported: there is no evidence that Webster or anyone else[4] knew that the SSA doctors had, while examining him for a sinus condition, diagnosed him as mentally retarded, or that there were records to that effect.

The Panel's suspicion that trial counsel knew about, and could have obtained, the SSA records, slip op. 5-6, is likewise unsupported. Trial counsel Moore states in

---

[4] Webster's mother's testimony regarding Webster's visit to the SSA, slip op. 6, consists of a statement that she once took Webster to the "social security office." Trial Tr. Vol. 23, 152. Mrs. Webster offered no testimony indicating that she knew what records, if any, the SSA had regarding Webster, or that he had been diagnosed by the SSA doctors as mentally retarded.

12

an unrebutted declaration that he "made every effort…to secure any and all evidence which might relate to the issue of Mr. Webster's mental retardation." S.App.502. Although he submitted a request for records, to the best of his recollection he never received the SSA records; it is his "good faith belief that we must have been told [two decades ago] that no records regarding Mr. Webster existed, otherwise we would have continued to pursue them by every means available to us." S.App.503. The Government produced no evidence to the contrary.

Indeed, the difficulties that Webster's current counsel experienced in obtaining the records – and the SSA's statement that counsel's receipt of those records was contrary to the SSA's normal procedures – are further confirmation of their previous unavailability. [5]  The Panel failed even to mention the suspicious circumstances under which the SSA finally disclosed the records to undersigned counsel (only as the result of an "error" of a now-retired SSA employee, according to the SSA, *see* S.App.558), and – shockingly – the fact that the SSA destroyed those records and the rest of Webster's file at a time when it knew that the records were being sought for purposes of capital litigation. S.App.559-60.

### 2.    Webster's Mental Retardation Was Hotly Contested at Trial, and the SSA Records Are Highly Relevant

The Panel asserts the records that Webster seeks to present do not "facilitate a new line of defense" because trial counsel introduced other pre-crime records "in which physicians diagnosed retardation" and because the prosecutor could have suggested that Webster was faking mental retardation to obtain disability benefits.

---

[5] *See* Appellant's Reply Br. 23-27.

Slip. Op. 6-7. This assertion sets an improper standard, mischaracterizes the evidence at trial, and misapprehends the importance of the new evidence.

The Government advanced four attacks on Webster's mental retardation defense at trial. As set forth in detail in Webster's appeal briefs, the SSA records undermine all of the Government attacks:

| Government Argument | SSA Records |
|---|---|
| Webster faked low, post-crime IQ scores of 51, 55, 59, and 65[6] to avoid death penalty | Three pre-crime diagnoses, with no motive to malinger.[7] |
| No unbiased, competent diagnoses of mental retardation[8] | Diagnoses made by government doctors tasked with weeding out fakers.[9] |
| Webster was not in special education classes; he lied about special education, thereby demonstrating his intelligence.[10] | Letter indicating that Webster *was* in special education classes, but that special education records were destroyed in the 1980s.[11] |
| Webster did not have adaptive deficits; Webster was not in special education and adapted to life in prison.[12] | Compelling evidence of adaptive deficits; SSA standards required SSA doctors to evaluate adaptive skills.[13] |

The Panel ignored or trivialized this evidence. It did not address at all the evidence of adaptive deficits or special education, both of which directly undercut key elements of the Government's case at trial. In minimizing the importance of the

---

[6] *See* S.App.124-25, 150-79.

[7] *See* Appellant's Opening Br. at 10-12, 22-25; Appellant's Reply Br. at 13-15.

[8] *E.g.*, in closing arguments the Government referred to one of Webster's experts as "Dr. Keyes, Doctor of Objectivity…who always works for the defense…." S.App.339.

[9] *See* Appellant's Opening Br. at 24-25; Appellant's Reply Br. at 15.

[10] *See*, *e.g.*, S.App.317-318.

[11] *See* Appellant's Opening Br. at 13, 26-27, Appellant's Reply Br. at 4, 19-20.

[12] The Government's trial evidence regarding adaptive deficits was weak; experts focused, contrary to legal and medical standards, on Webster's behavior in prison and their mistaken belief that he had not been enrolled in special education classes. *See, e.g.*, S.App.325. *See Thomas v. Allen*, 614 F. Supp. 2d 1257, 1282 (N.D. Ala. 2009); *Wiley v. Epps*, 668 F. Supp. 2d 848, 900 (N.D. Miss. 2009); *see also* S.App.483-84 ¶28 (noting prison expectations for adaptive functioning cannot be substituted for society's expectations).

[13] *See* Appellant's Opening Br. at 13, 26-28; Appellant's Reply Br. at 15-21.

records that it did acknowledge, the Panel advanced two additional arguments. First, the Panel's main contention – that the SSA records would be subject to the same accusations of malingering– strains credulity. Webster was not applying to the SSA for benefits for mental retardation; he was applying for benefits for a *sinus condition*. S.App.379. The Panel's theory that an individual applying for benefits for one condition might fake a separate, unrelated condition is illogical.

Second, the Panel inaccurately characterized the one pre-crime diagnosis introduced at trial and trivialized the findings of the SSA doctors. The only pre-crime medical records introduced at trial, records "in which," the Panel stated, "physicians diagnosed retardation," slip op. 6, consisted of a single IQ test and evaluation. S.App.122-123. The SSA records, though, included *three* pre-crime diagnoses made by federal government doctors. The substance of the SSA records not only corroborated, but provided overwhelming evidence of, mental retardation at a time when Webster had not committed or been charged with a crime, and could not be accused of faking test results to avoid the death penalty. That the SSA records would not have established a "new line of defense" is meaningless; they directly undercut the Government's attack at trial.

## CONCLUSION

Webster respectfully requests that this Court: (1) grant his petition for rehearing en banc; (2) reverse the District Court's order; (3) find that he is entitled to review of the previously unavailable evidence under 28 U.S.C. § 2241; and (4) remand for discovery and an evidentiary hearing.

15

Dated: September 15, 2014　　　　　DORSEY & WHITNEY LLP


By:　/s Steven J. Wells
　　　　　Steven J. Wells
　　　　　　*Counsel of Record*
　　　　　Kirsten E. Schubert
　　　　　Timothy J. Droske
　　　Suite 1500, 50 South Sixth Street
　　　Minneapolis, MN 55402-1498
　　　Telephone:  (612) 340-2600

　　　*Attorneys for Petitioner-Appellant*
　　　*Bruce Carneil Webster*

**CERTIFICATE OF SERVICE**

**Certificate of Service When All Case Participants are CM/ECF Participants**

I hereby certify that on September 15, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/EVG system.


s/ Steven J. Wells_____