# 14-1049

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

**BRUCE CARNEIL WEBSTER,**
Petitioner-Appellant

v.

**JOHN F. CARAWAY, Warden**
Respondent-Appellee

On Appeal from the United States District Court
For the Southern District of Indiana, Terre Haute Division
District Court No. 2:12-cv-086-WTL-WGH
The Honorable Judge William T. Lawrence

**RESPONSE OF JOHN F. CARAWAY TO
PETITION FOR REHEARING EN BANC**

Josh J. Minkler
Acting United States Attorney

Wes Hendrix
Special Assistant U.S. Attorney
Texas Bar No. 24041086
10 West Market Street, Suite 2100
Indianapolis, Indiana  46204-3048
Telephone:  214.659.8600
wes.hendrix@usdoj.gov

Attorneys for Appellee

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES.............................................................................. ii

I.     BACKGROUND AND PROCEDURAL HISTORY ...................................... 2

II.    REASONS FOR DENYING THE PETITION ............................................. 4

      A.     In the "overwhelming majority of cases," section 2255 specifically prohibits prisoners from circumventing its limitations and challenging their convictions or sentences through a habeas petition under section 2241........................................................ 4

      B.     The panel correctly held that Webster was not entitled to section 2241 relief because no structural problem with section 2255 prevented him from asserting his argument................................. 6

      C.     The panel's opinion does not conflict with Seventh Circuit law...... 8

      D.     The evidence at issue would not facilitate a new line of defense.................................................................................. 14

      E.     Given the extraordinary facts here, the issue is unlikely to recur. .................................................................................. 15

CONCLUSION ....................................................................................... 15

## TABLE OF AUTHORITIES

**Federal Cases**                                                                  **Page(s)**

*Atkins v. Virginia*, 536 U.S. 304 (2002) .......................................................... 6

*Begay v. United States*, 553 U.S. 137 (2008) ............................................. 12, 13

*Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) ................................. *passim*

*Brown v. Rios*, 696 F.3d 638 (7th Cir. 2012) ...................................................... 4

*Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) ...................................... 9, 11, 12

*Hope v. United States*, 108 F.3d 19 (7th Cir. 1997) ................................... 10, 11

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ...................................... 5, 7, 11

*In re Webster*, 605 F.3d 256 (5th Cir. 2010) .................................................... 2

*Sanders v. United States*, 373 U.S. 1 (1963) ................................................. 10

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ........................................................ 10

*Taylor v. Gilkey*, 314 F.3d 832 (7th Cir. 2002) .............................. 7, 9, 10, 11

*Tyler v. Cain*, 533 U.S. 656 (2001) ................................................................. 5

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998) ................................. 2

*United States v. Webster*, 421 F.3d 308 (5th Cir. 2005) ........................... 2, 14

*Unthank v. Jett*, 549 F.3d 534 (7th Cir. 2008) ......................................... 9, 11

*Webster v. United States*, No. 4:00-CV-1646, 2003 WL 23109787
   (N.D. Tex. Sept. 30, 2003) ....................................................... 2, 7, 14

**Federal Statutes**

18 U.S.C. § 924(c) (1994) ................................................................................ 2

18 U.S.C. § 1201(a)(1) (1994) ......................................................................... 2

18 U.S.C. § 1201(c) (1994) .............................................................................. 2

18 U.S.C. § 3596(c) ......................................................................................... 6

28 U.S.C. § 2241 .................................................................................. *passim*

ii

**Federal Statutes (continued)** **Page(s)**

28 U.S.C. § 2244(b)(3)(C) ................................................................. 5

28 U.S.C. § 2255(e) ....................................................................... 5

28 U.S.C. § 2255(h) ....................................................................... 5

28 U.S.C. § 2255(h)(1) .................................................................. 10

Over the past eighteen years, Webster has contested his eligibility for the death penalty by claiming that he is mentally retarded. He has seized every opportunity to assert this claim—at trial, on direct appeal, in a section 2255 motion, on appeal from the denial of that motion, and in a motion for authorization to file a successive 2255. At every turn, the district court of conviction and the Fifth Circuit have rejected his claim, preserving the jury's recommendation of a death sentence and the district court's determination that Webster is not mentally retarded.

This appeal is Webster's latest attempt to prove his mental retardation. This time, he claims that new evidence of mental retardation makes section 2255 inadequate and justifies a writ of habeas corpus under 28 U.S.C. § 2241. The district court below and a unanimous panel of this Court disagreed, concluding that "a prisoner's own failure to present evidence does not demonstrate statutory inadequacy or ineffectiveness." Slip Op. at 3-4. Webster now seeks rehearing en banc, but his supporting arguments are without merit. The panel's opinion is faithful to the law, and it is Webster who asks this Court to ignore Congress's limitations on collateral attacks. At oral argument, counsel for Webster admitted candidly that (1) his argument is that because section 2255's limitations on successive petitions bar his claim, he must be able to use 2241, and (2) he therefore wants this Court to "provide an exception [to the limitations on collateral attacks] that Congress didn't." (Oral Arg. at 15:50-17:55.) The panel properly rejected Webster's invitation to ignore the statutory structure, and there is no reason to reconsider the appeal en banc.

1

## I.  BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial in the Northern District of Texas, Webster was convicted of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (1994); conspiring to commit kidnapping, in violation of 18 U.S.C. § 1201(c) (1994); and using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. 924(c) (1994).  He was sentenced to death on the charge of kidnapping resulting in death, and the district court found that Webster was not mentally retarded.  *United States v. Webster*, 162 F.3d 308, 319-20, 351 (5th Cir. 1998) (*"Webster I"*).  The Fifth Circuit affirmed, rejecting an argument that he was ineligible for the death penalty due to mental retardation.  *Id.* at 353.  Webster then filed a motion for post-conviction relief under 28 U.S.C. § 2255, arguing that he was mentally retarded.  *Webster v. United States*, No. 4:00-CV-1646, 2003 WL 23109787 (N.D. Tex. Sept. 30, 2003) (*"Webster II"*). The district court again rejected Webster's claim and denied the motion, *id.* at *9-*14, and the Fifth Circuit affirmed.  *United States v. Webster*, 421 F.3d 308, 312-13 (5th Cir. 2005) (*"Webster III"*).  In 2009, Webster sought authorization from the Fifth Circuit to file a second section 2255 motion, arguing that new evidence established his mental retardation.  *In re Webster*, 605 F.3d 256, 256-57 (5th Cir. 2010).  The court of appeals denied the request because section 2255(h)(1) limits successive challenges based on newly discovered evidence to new evidence showing innocence of the offense.  *Id.* at 257-59.

Based on the same evidence presented in the Fifth Circuit, Webster petitioned in the Southern District of Indiana—the district of his detention—for

a writ of habeas corpus under 28 U.S.C. § 2241. ROA.8. The district court denied Webster's petition. ROA.250-62. It recognized this Court's case law providing that "§ 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective review—and then only when as in *Davenport* the claim being foreclosed is one of actual innocence." ROA.258. Because Webster's argument—that he is mentally retarded and thus death-penalty ineligible—"is by no means new," the court noted that he was able to make the argument prior to his section 2241 petition. ROA.260. In fact, the court found that "Webster's mental ability was a highly contested issue at every stage of the proceedings." *Id.*

Additionally, the court rejected Webster's contention that it was impossible for him to have previously raised his current claim. It noted that, "[b]ased on affidavits provided by Webster, trial counsel requested the information prior to Webster's trial, but the documents were never produced. Apparently, trial counsel did not follow-up on his request. The information was not requested again until October 2008, more than twelve years after his trial and several years after his direct appeals and his initial § 2255 motion were unsuccessful." ROA.260 n.10. As a result, the court concluded that "it is now too late to present this evidence." *Id.*

The panel affirmed, noting that "[n]o court of appeals has deemed § 2255 'inadequate or ineffective' just because counsel failed to take maximum advantage of the opportunity it extends." Slip Op. at 4. It held that "[t]he trial, the direct appeal, and the proceeding under § 2255 offered opportunities to use

3

the evidence that Webster now seeks to present.  That Webster's legal team did not take (full) advantage of those opportunities does not demonstrate a flaw in the statute." *Id.*  The panel likewise rejected Webster's invitation to hold that section 2255(h)'s limitations on successive petitions render section 2255 inadequate as a whole because doing so would mean AEDPA is self-negating. *Id.*  Additionally, the panel held that no retroactive change in the law made section 2241 available to Webster: "Instead [Webster] wants to use § 2241 to make a better factual record and to place his arguments before a different circuit, hoping for a better result.  These desires, understandable as they are, do not call into question the adequacy or effectiveness of § 2255."  Slip Op. at 5.  Finally, the panel held that Webster's evidence is not "newly discovered" because he and his lawyers knew of his application for Social Security benefits and could have retrieved the records for trial and the § 2255 proceeding.  Slip Op. at 5-6.  In any event, the panel held that the record would not have provided a new defense.  Slip Op. at 6-7.

## II.  REASONS FOR DENYING THE PETITION

### A.    In the "overwhelming majority of cases," section 2255 specifically prohibits prisoners from circumventing its limitations and challenging their convictions or sentences through a habeas petition under section 2241.

"Federal prisoners who seek to bring collateral attacks on their conviction or sentences must ordinarily bring an action under 28 U.S.C. § 2255, 'the federal prisoner's substitute for habeas corpus.'" *Brown v. Caraway,* 719 F.3d 583, 586 (7th Cir. 2013) (quoting *Brown v. Rios,* 696 F.3d 638, 640 (7th Cir. 2012)).  Through the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), Congress significantly limited successive attempts at post-conviction relief. *See Tyler v. Cain*, 533 U.S. 656, 661 (2001). A prisoner must seek permission from the court of appeals authorizing a successive petition, and permission is granted only if the prisoner makes a "prima facie showing" that his claim relies on (1) persuasive new evidence of his innocence of the crime, or (2) a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review. 28 U.S.C. § 2255(h); 28 U.S.C. § 2244(b)(3)(C). The only time a prisoner may bypass section 2255's limitations and utilize section 2241 is when he satisfies the "savings clause," showing that "the remedy by motion [under section 2255] is inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e).

To qualify for section 2241 relief, there must be a structural problem with section 2255 that prevents an opportunity to address the alleged problem on collateral review. *In re Davenport,* 147 F.3d 605, 609-11 (7th Cir. 1998). Because "[t]he essential function [of habeas corpus] is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence," "a procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Id.* at 609, 611. Thus, *Davenport* requires three conditions to secure section 2241 relief: (1) "the prisoner must show that he relies on a 'statutory-interpretation case,' rather than a 'constitutional case'";

5

(2) "the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion"; and (3) there must be "a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Brown*, 719 F.3d at 586.

### B. The panel correctly held that Webster was not entitled to section 2241 relief because no structural problem with section 2255 prevented him from asserting his argument.

Ignoring the savings clause's and *Davenport*'s requirements for section 2241 relief, Webster "wants to use § 2241 to make a better factual record and to place his arguments before a different circuit, hoping for a better result." Slip Op. at 5. Webster does not rely on a statutory-interpretation case made retroactively available to him. To the contrary, he recognized at oral argument that there has been no change in the law since his trial. (Oral Arg. at 14:00-14:17.) Even before the Supreme Court held that it was unconstitutional to execute the mentally retarded in *Atkins v. Virginia*, 536 U.S. 304 (2002), and at the time of Webster's conviction and sentence, federal law prohibited the government's execution of the mentally retarded. *See* 18 U.S.C. § 3596(c). The law remains the same today. Thus, unlike the petitioners in *Davenport* and *Brown*, where 2241 relief was available due to a retroactive change in the law showing that the prisoner had not committed a crime or had received an illegally high sentence, the legal circumstances here have not changed. As a result, he cannot satisfy the savings clause's requirements.

Moreover, unlike the petitioners in *Davenport* and *Brown*, no structural problem with 2255 prevented Webster from making his claim. Because of the

6

statutory bar against executing the mentally retarded that applied at trial, the issue of mental retardation was front and center at trial, with both the defense and the government marshaling considerable efforts toward it.  Whether Webster is mentally retarded has been thoroughly litigated with substantial fact finding from the very beginning, under the standard that Webster acknowledges is the proper one.  Moreover, the court of conviction, although agreeing with the government that several of Webster's mental-retardation claims had been raised and rejected, considered those claims anew in light of *Atkins*.  *Webster II*, 2003 WL 23109787, at *5.

Thus, Webster has had repeated opportunities to raise the question of his alleged mental retardation, and he seized those opportunities.  "Nothing in section 2255, including limitations on successive motions," prevented Webster from obtaining relief on his claim that his alleged mental retardation barred his execution.  *In re Davenport*, 147 F.3d at 609.  He simply failed to convince the trial court or the appellate court.  As this Court has noted, "[e]very court that has addressed the matter has held that § 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review."  *Taylor v. Gilkey*, 314 F.3d 832, 835-36 (7th Cir. 2002).  Webster has received multiple rounds of effective review, so 2241 should be unavailable.

Nor can Webster establish that 2255 was inadequate or ineffective based on his claim that he did not have a reasonable opportunity to make his argument.  In addition to the fact that Webster has repeatedly and

unsuccessfully claimed his mental retardation, the panel correctly concluded that the evidence on which Webster now relies is not "newly discovered." Slip Op. at 5-6. The evidence "concerns [Webster's] own application for Social Security disability benefits," and he, his family, and his trial lawyer knew about the application, so "it would have been possible to retrieve the records in time for use during the trial and § 2255 proceeding." *Id.* Webster's trial lawyer requested the documents from the SSA, but the lawyer "lacks any memory of a response and therefore *assumes* that he must have been denied access." Slip Op. at 6. But an alternative inference is that "former counsel, or an investigator on his behalf, simply did not follow through." *Id.* That is a sensible inference in light of Webster's current counsel's ability to obtain the records "less than four months after asking, even though the disability case is an old one and many records had been sent to long-term storage." *Id.* In any event, his mother testified at trial that she took him to the Social Security office for help, but defense counsel did not follow up. (Tr. Trans. at 23:152.) Given this record, the panel correctly concluded that "[n]one of the difficulties (if there were any) that original counsel encountered can be blamed on § 2255."

**C.     The panel's opinion does not conflict with Seventh Circuit law.**

Webster asserts that because section 2255(h)'s limits on successive petitions prevent him from presenting his evidence in the 2255 arena, he must be allowed to present the evidence here. In his brief, he claims that "[w]here, as here, § 2255 is not available, § 2241 is the only avenue for review." Webster Br. at 47. At oral argument, he was even more candid, arguing that because

the Fifth Circuit held he could not proceed under 2255(h)(1), "that's why we're allowed to use 2255(e)." Oral Arg. at 15:50-16:48. To do so, he recognized that this Court would need to strike new ground and "provide an exception that Congress didn't because 2255(h)(1) and (h)(2) simply don't cover this." Oral Arg. at 17:32-17:55. When pressed, counsel admitted that the only limiting principle to his proposed rule was pre-AEDPA abuse-of-the-writ principles. Slip Op. at 4; Oral Arg. at 21:23-23:10.

The panel rightfully rejected Webster's novel argument because this Court has soundly rejected it. Slip Op. at 4 (citing *Unthank v. Jett*, 549 F.3d 534, 535-36 (7th Cir. 2008), and *Taylor*, 314 F.3d at 835). In *Garza v. Lappin*, for example, this Court explained that "[t]he mere fact that [a] petition would be barred as a successive petition under § 2255, however, is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing." 253 F.3d 918, 921 (7th Cir. 2001). In other words, Section 2241's remedy does not become available simply because one cannot meet the requirements for filing a successive section 2255 motion.

*Taylor* makes this point abundantly clear. There, the petitioner wanted to argue, based on a new Supreme Court decision, that the district court erred in denying his first section 2255 motion. *Taylor*, 314 F.3d at 833-34, 836. The intervening decision, however, did not create a new and retroactive rule of constitutional law. *Id.* at 836. At most, it showed that the district court had erred in applying an old rule to his situation, for which section 2255(h) would

9

not allow a second collateral attack. *Id.* The petitioner argued that whenever section 2255(h) closes the door to a renewed challenge under section 2255, section 2255(e) must open the door to a challenge under section 2241. *Id.* This Court disagreed, concluding that this would make section 2255(h) self-defeating: "To say that [the] limitations [adopted in 1996] authorize further collateral proceedings would be to use [§ 2255(e)] to return the courts to the world of *Sanders v. United States*, 373 U.S. 1 (1963), in which prisoners may file as many collateral attacks as they please, provided that they don't abuse the writ." *Id.* (parallel citations omitted). Allowing that result would be contrary to congressional intent: "One goal of [AEDPA], which added § 2244(b) and [§ 2255(h)] to the Judicial Code, was to replace *Sanders* with an approach under which only defined circumstances permit successive collateral attacks. The escape hatch in [§ 2255(e)] must be applied in light of that history." *Id.*

The same rationale applies here and bars Webster's argument. Section 2255(h) envisions and permits certain types of claims based on new evidence. Prior to AEDPA, the Supreme Court recognized that ineligibility for the statutory aggravating factors exposing a defendant to the death penalty was the equivalent of actual innocence that could overcome the bar to successive collateral attacks. *See Sawyer v. Whitley*, 505 U.S. 333 (1992). But AEDPA curtailed that by restricting actual-innocence claims to claims that the defendant was innocent "of the offense." 28 U.S.C. § 2255(h)(1). In *Hope v. United States*, this Court made clear that AEDPA abrogated this aspect of *Sawyer* and limited successive 2255s to challenges to the conviction. 108 F.3d

10

119, 120 (7th Cir. 1997)).  Thus, unlike statutory or treaty claims, which Congress apparently never considered, Congress specifically addressed new-evidence claims and limited them to evidence relating to innocence of the offense.  The fact that Webster cannot satisfy section 2255(h)(1)'s statutory standard to raise his claim does not mean that section 2255 is inadequate.  Rather, it means only that he cannot satisfy the existing standards.  *See Unthank,* 549 F.3d at 535-36; *Taylor,* 314 F.3d at 836; *Garza* 253 F.3d at 921.

Contrary to Webster's assertion otherwise, the panel's opinion does not "read[] § 2255(e)'s savings clause out of existence."  Pet. at 5.  The opinion recognizes that "circumstances [might exist] that may justify a federal prisoner's use of § 2241 to test the validity of his conviction or sentence."  Slip Op. at 5.  Citing *Davenport* and *Brown,* the panel explained that "[w]hen a change of law, retroactively applicable, shows that the prisoner did not commit a crime or has received an illegally high sentence, § 2241 is available if it otherwise would be impossible to implement the Supreme Court's intervening decision."  Slip Op. at 5.  But because "Webster is not the beneficiary of a retroactive decision that cannot be implemented through § 2241," *Davenport* and *Brown* do not support his § 2241 petition.

Webster faults the panel for not addressing *Garza v. Lappin* because *Garza* permitted § 2241 relief even absent a retroactive statutory decision.  Pet. at 8.  But this omission is understandable because *Garza* is clearly inapplicable to Webster.  In *Garza,* the Court explained that section 2255 is inadequate or ineffective only in "rare circumstances in which the operation of

11

the successive petition rules absolutely prevented the petitioner from ever having an opportunity to raise a challenge to the legality of his sentence." 253 F.3d at 922. Because Garza's treaty-based argument did not arise until the Inter-American Commission on Human Rights issued a report determining that his execution would violate international law, "it was *literally impossible* for him to have raised it at any time earlier," including during his direct appeal or first section 2255 motion. *Id.* at 923 (emphasis added). And because section 2255(h) does not permit successive petitions based on newly created treaty-based rights, it could not be presented as a successive petition under section 2255. Thus, this Court permitted Garza to proceed under section 2241 because "[s]ection 2255 does not now and *has never provided* an adequate avenue for testing Garza's present challenge to the legality of his sentence." *Id.* (emphasis added). Unlike Garza, Webster has no newly created right since the time of his direct appeal and section 2255 motion, and it was not "literally impossible" for Webster to have raised his challenge earlier. To the contrary, the law has not changed since his trial, he has repeatedly litigated his alleged mental retardation, and he was aware of the facts necessary to gather the Social Security records. Thus, unlike *Garza*, section 2255 did provide an adequate avenue here for testing the legality of Webster's sentence.

Additionally, Webster is mistaken when he asserts that the panel's opinion embraces the minority position discussed in *Brown v. Caraway.* Pet. at 5-9. In *Brown,* this Court permitted a petitioner to use section 2241 to challenge his then-mandatory guideline sentence under *Begay v. United States,*

12

553 U.S. 137 (2008).  719 F.3d at 588.  The Court explained, "provided that the other *Davenport* conditions are present, we conclude that a petitioner may utilize the savings clause to challenge the misapplication of the career offender Guideline, at least where, as here, the defendant was sentenced in the pre-*Booker* era."  *Id.*  In a statement concerning the opinion's circulation under Circuit Rule 40(e), Judge Easterbrook expressed "doubts about the panel's opinion," which produced a circuit split.  *Id.* at 596-97.  Specifically, Judge Easterbrook disagreed with *Davenport*'s holding that "§ 2255 is 'ineffective' if the argument was bound to fail at the time it should have been presented"—a proposition on which the *Brown* opinion relied.  *Id.* at 587, 597.  Judge Easterbrook also argued that "by combining *Davenport* and *Narvaez*, the panel concludes that § 2255(f) and § 2255(h) make § 2255 as a whole 'inadequate or ineffective" because the AEDPA sets limits."  *Id.* at 600.  Despite these concerns, however, Judge Easterbrook did not vote to hear *Brown* en banc, recognizing that "*Davenport* and *Narvaez* enjoy support in this circuit" and "[r]esolution of the conflict belongs to Congress or the Supreme Court."  *Id.*

The panel's opinion in this case does not shoehorn the concerns expressed in *Brown'*s Rule 40(e) Statement into the law of this circuit.  It had no need or opportunity to do so.  The panel's opinion does not address *Davenport*'s and *Brown*'s forgiveness of a petitioner's failure to raise a previously foreclosed legal argument—no doubt because that simply is not an issue in this appeal.  Nor does the panel's opinion address the combination of *Davenport* and *Narvaez* to permit *Begay*-based challenges to mandatory

13

guideline sentences.  Webster seems most concerned with the panel's statement that "§ 2255(h) does not make § 2255 as a whole inadequate or ineffective."  Slip Op. at 4.  But, as noted above, the panel cites two cases in support, as this Court has repeatedly reached that conclusion.  The reality is that by rejecting Webster's bold position—asking the Court "to apply pre-1996 law and to hold that an additional collateral attack is proper whenever the prisoner does not abuse the writ"—the panel preserved this Court's precedent and remained faithful to the limitations on collateral review set by Congress.

**D.     The evidence at issue would not facilitate a new line of defense.**

Although unnecessary for the panel's legal conclusion, it noted correctly that the Social Security records would not have facilitated a new line of defense.  Slip Op. at 6-7.  The records do not detract in any significant way from the strength of the government's evidence at trial, especially on the key issue of adaptive skills.  The records consist of the findings of three medical professionals in connection with his application for disability benefits based on a sinus condition one year before the murder, which was ultimately denied.  But that evidence is weak and cumulative.  One of his three reports suspected malingering, one did not reflect any I.Q. test, and one was merely a physical examination.  Gov't Br. at 51-60.  The government's evidence, in contrast, showed that Webster has demonstrated adaptive skills in a number of ways—ways particularly tailored to the criminal and correctional environments in which he has spent his adolescence and adulthood.  *See Webster III*, 421 F.3d at 313 n.15; *Webster II*, 2003 WL 23109787, at *12-*14.

Additionally, Webster's reliance on the fact that his evidence was created pre-offense is undermined by his admission at trial of other pre-offense evidence, including an I.Q. test resulting in a low score.  Webster claims that "[b]ecause these newly available diagnoses were made before his incarceration, when Webster was a 'real world' patient, and expressly conclude that there is no evidence of malingering, they directly undermine the government's evidence and argument that Webster consistently was faking later tests in order to secure a mental retardation defense."  Webster Br. at 25.  But, as the district court noted, defense counsel introduced evidence that Webster had a low score on an I.Q. test taken years before the kidnapping and murder.  Gov't Br. at 9-10; Tr.23:177-78, 213; Tr.24:145.  Moreover, one of Webster's trial experts testified that the person giving the exam effectively concluded that he was mildly retarded, and another expert relied on the evidence to rule out malingering.  *Id.*  This trial evidence blunts his claim that the pre-offense Social Security records would have overwhelmingly refuted the government's case, and it supports the panel's opinion.

 **E. Given the extraordinary facts here, the issue is unlikely to recur.**

Finally, en banc review is unwarranted because the issue is unlikely to recur.  Defense counsel confines his argument "to the extraordinary facts here" and admits that his proposed rule would apply to a "very, very limited number of potential claimants."  Oral Arg. at 23:10-23:30, 24:48-25:02.

## III.  CONCLUSION

The petition for rehearing en banc should be denied.

Respectfully submitted,

Josh J. Minkler
Acting United States Attorney

By:  *s/Wes Hendrix*
Wes Hendrix
Special Assistant U.S. Attorney
Texas Bar No. 24041086
10 West Market Street, Suite 2100
Indianapolis, Indiana  46204-3048
Telephone:  214.659.8600
wes.hendrix@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*s/Wes Hendrix*
Wes Hendrix
Special Assistant U.S. Attorney